

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 AUG 27  P 3: 52

CLERK'S OFFICE
AT BALTIMORE

U.S. Department of Justice

United States Attorney

District of Maryland

---

*Vincent J. Falvo, Jr.*
*Special Assistant United States Attorney*
*Vincent.Falvo@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4840*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

July 18, 2014

Deborah Boardman
Assistant Federal Public Defender
100 South Charles Street
BankAmerica Tower II, Ninth Floor
Baltimore, MD 21201

      Re:    *United States v. Michael E. Sewell (D.Md.)*
            JKB-14-0354

Dear Ms. Boardman:

      This letter confirms the plea agreement which has been offered to Michael E. Sewell, the Defendant, by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by July 23, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

      1.    The Defendant agrees to waive prosecution by indictment pursuant to Federal Rule of Criminal Procedure 7(b) and to plead guilty to Count One of an Information charging him with falsification of a document required to be kept by ERISA, in violation of 18 U.S.C. § 1027. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

      2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

      a.    There was an employee benefit plan under Title I of Employment Retirement Income Security Act of 1974 ("ERISA");

  b. the Defendant made a false statement or omission of a fact in a document required to be kept as part of that employee benefit plan;

  c. the Defendant made the statement knowing it to be false or concealed a fact knowing it should have been disclosed.

### Penalties

3.  The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: five years of imprisonment; a $250,000 fine or twice the pecuniary gain derived from the offense pursuant to the alternative fine provision of 18 U.S.C. § 3571(d); and three years of supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4.  The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

  a. The Defendant has the right to have his case presented to the Grand Jury, which would decide whether there is probable cause to return an Indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and he understands that the charges will be filed by the United States Attorney without the Grand Jury.

  b. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

  c. If the Defendant elected a jury trial, the jury would be composed of

---

[1]  Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    d. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    e. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    f. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    h. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the

3

Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a. Pursuant to U.S.S.G. § 2E5.3(a)(2), the sentencing range for this offense is calculated using U.S.S.G. § 2B1.1;

   b. Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is six (6).

   c. An upward adjustment for the amount of loss resulting from the offense should be calculated pursuant to U.S.S.G. § 2B1.1(b)(1)(F). However, the amount of loss resulting from the offense is in dispute.

   d. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. In addition, this Office will make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level reduction provided that the final offense level (before two-level reduction for acceptance of responsibility) is sixteen (16) or greater. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the applicable guideline range.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Collection of Financial Obligations

11. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines

range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

        c.        Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

        d.        The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

13.        The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

14.        The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands

that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Vincent J. Falvo, Jr.
Special Assistant United States Attorney

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/21/14
Date

_____
Michael E. Sewell

I am Mr. Sewell's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

7/23/14
Date

_____
Deborah Boardman, Esquire

8

## Attachment A

International Brotherhood of Electrical Workers (IBEW) Local 24, based in Baltimore, Maryland represents electrical workers who work on commercial and industrial sites. Local 24 has executed a master collective bargaining agreement with major electrical contractors in Maryland represented by the Baltimore Division of the Maryland Chapter of the National Electrical Contractors Association (NECA) ("The Master Agreement").

The Master Agreement requires signatory employers to make monthly contributions to seven employee health/welfare and pension benefit plans, as defined in section 3(1) of ERISA, 29 U.S.C. § 1002(l) (the "MEI Benefit Plans"). Pursuant to the Article 6 of the Master Agreement, those employer contributions were calculated either on a per hour worked basis or as a percentage of the employer's gross monthly payroll. Article 6 of the Master Agreement also required employers to file monthly remittance reports with the MEI Benefit Plans that listed the number of hours worked by each employee covered by the Master Agreement as well as the dollar amount due to the MEI Benefit Plans on behalf of each covered employee.

Pursuant to ERISA, the MEI Benefit Plans were required to file annual reports with the Secretary of Labor using Department of Labor Form 5500. Certain information contained in the monthly remittance reports filed by covered employers was required to be disclosed by the MEI Benefit Plans in Department of Labor Form 5500, which was filed annually by the MEI Benefit Plans and was required to be published, pursuant to Title I of ERISA. Title I of the ERISA also requires the publication of the Form 5500 annually to the MEI Benefit Plans' participants. The information contained in the remittance reports, which covered employers submitted to the MEI Benefit Plans was used to generate annual 5500 reports for each of the MEI Benefit Plans required by ERISA to file them.

Michael E. Sewell ("Sewell") is the sole owner and officer of MESCO, Inc., a small electrical company located in the Baltimore area. Since January 1999, MESCO's employees were represented by Local 24 pursuant to a letter of assent to the basic terms of the Master Agreement including the requirements to contribute to the MEI Benefit Plans. Sewell also owned a separate corporation called Michael E. Sewell and Associates, Inc. ("MESI").

Beginning in January 2009, Sewell began paying some wages earned by MESCO employees using the MESI payroll. Sewell paid some MESCO employees all of their wages on the MESI payroll and paid other MESCO employees only a portion of their wages on the MESI payroll. The latter group of MESCO employees received two paychecks per pay period: one from MESCO and another from MESI.

From January 2009 through December 2011, Sewell knowingly failed to report the hours worked by MESCO employees that were carried on the MESI payroll in its monthly remittance reports to the MEI Benefit Plans as required by the Master Agreement. Each of the monthly remittance reports submitted by Sewell on behalf of MESCO from January 2009 through December 2011 underreported the number of hours worked by MESCO employees subject to the terms of the Master Agreement.

In addition, Sewell failed to make the contributions to the MEI Benefit Plans for those hours worked by MESCO employees which Sewell paid using the MESI payroll. As a result of Sewell's actions, the MEI Benefit Plans did not receive all the contributions due from MESCO under the terms of the Master Agreement and MESCO employees did not receive credit with the MEI Benefit Plans for all the hours they worked for MESCO.

7/21/14
Date

Michael E. Sewell

7/23/14
Date

Deborah Boardman, Esquire

10